1    **IN THE UNITED STATES DISTRICT COURT**
     **FOR**
2    **THE MIDDLE DISTRICT OF ALABAMA**

3

4

5

6    THE UNITED STATES
        OF AMERICA
7                                    CRIMINAL ACTION NO.
            VS.                      2:06-CR-155-MHT
8
     QUINTRELL MARTIN
9

10

11

12

13                       RULE 35
             MOTION TO REDUCE SENTENCE
14

15

16

17

18                  *  *  *  *  *  *  *  *  *

19

20

21   HEARD BEFORE:      The Hon. Myron H. Thompson

22   HEARD AT:          Montgomery, Alabama

23   HEARD ON:          February 1, 2008

24   APPEARANCES:       Verne H. Speirs, Esq.

25                      Richard K. Keith, Esq.

1 WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE THE HON.
MYRON H. THOMPSON ON FEBRUARY 1, 2008 AT THE UNITED STATES
2 COURTHOUSE IN MONTGOMERY, ALABAMA:

3

4            THE COURT:  The Court cause the case of *United States*

5 *vs. Quintrell Martin*, criminal action number two oh six C R one

6 fifty-five M. H. T.  We're here on a motion to reduce sentence.

7            Representing the Government is Mr. Speirs, is that

8 correct?

9            MR. SPEIRS:  Good morning, Your Honor.  Verne Speirs

10 for the United States.

11            THE COURT:  And Mr. Keith.

12            MR. KEITH:  Good morning, Your Honor.  Richard Keith

13 for Quintrell Martin.

14            THE COURT:  Now the Government's motion asks for an

15 eighteen month reduction.  What's the defendant's position on

16 that?

17            MR. KEITH:  Your Honor, while the defendant

18 appreciates the Government's offer, Mr. Martin feels that based

19 on things that he has done during this case, that he should be

20 entitled to more than eighteen months.  And when you like to

21 hear why, Judge, I'll get into it.

22            THE COURT:  Yes, go ahead.

23            MR. KEITH:  Judge, a little case history is

24 appropriate in this case.  I'll be very brief with it.

25            Back on July twenty-eighth of the year two thousand

1    and four Mr. Martin was charged here in Montgomery County

2    Circuit Court with a capital murder offense.  On June

3    twenty-eighth of the year two thousand and six while he had

4    been incarcerated that entire time under a no-bond situation,

5    Mr. Martin testified in front of a Montgomery County grand jury

6    and that case was no billed.

7            Judge, the case was no billed, and it's a bone of

8    contention with Mr. Martin and the prosecutor, basically.  The

9    case was no billed because the facts were, I think the Court

10   has received some of the testimony of earlier hearings.

11           Mr. Martin shot and killed this drug dealer by the

12   name of Johnny Jackson in self-defense.  We call it

13   "self-defense" because that's what it was, and that's what the

14   grand jury found.  I understand Mr. Speirs, he would like to

15   call it "capital murder".  Without getting into another

16   argument as to whether it was or wasn't, the case was

17   no-billed.  The case was self-defense.

18           Both Mr. Jackson and Mr. Martin at the time were

19   engaged in trafficking drugs.  Both of them were convicted

20   felons.  Both of them were armed with handguns at the time of

21   the offense.  Forensics proved true that Mr. Jackson shot Mr.

22   martin twice, and Mr. Martin fired back in self-defense,

23   causing Mr. Jackson's death.

24           Judge, the case was no billed on June twenty-eighth

25   of oh six.  Because Mr. Martin had been on probation, he was

1  revoked for having a gun during the time he was on probation

2  and for having a felony on his record.  He was given a five

3  year sentence.  That's why he has been in the State Department

4  of Corrections here since the case was no billed and since

5  basically the time he remains in the state.

6          THE COURT:  Now he's with the State for what, now?

7          MR. KEITH:  Judge, he had been revoked by the State

8  for having a gun while on probation; and, of course, ultimately

9  for having a felony and having a gun.  The same charges that he

10  was charged with here in federal court after his state court

11  case was no-billed he was brought in federal court and charged

12  with a nine twenty-two G one offense for a felon in possession

13  of a firearm.  So he was given five years by Judge McCooey

14  (ph.) for having a gun, and then came to federal court and was

15  given a hundred and twenty months sentence for having a gun and

16  a felony record.

17          During his course of this charge, Mr. Martin

18  cooperated with the Government.  He cooperated with the State

19  court prosecutors, Your Honor.  They came to Mr. Martin.  He

20  had information the State wanted.  Mr. Speirs and myself came

21  up with a plea agreement basically where he will get

22  substantial assistance in the form of a downward departure,

23  that he would not be charged with any other -- certainly he

24  would not be charged with any capital murder offense or any

25  other offenses, and basically the plea agreement does state the

1    prosecutor at his discretion will determine what to recommend

2    to the Court for an ultimate Rule thirty-five downward

3    departure.

4            Your Honor, if I may, the basis of Mr. Martin's

5    grounds for more asking the Court to convince Mr. Speirs that

6    he get more than an eighteen month reduction are based on two

7    letters from the state court prosecutors as Mr. Martin

8    testified.  One of them, Scott Green's, was included in the

9    Government's motion for reduction of sentence, and another one

10   from another prosecutor, Calvin Williams, Assistant District

11   Attorney here in Montgomery, about some other additional

12   substantial assistance that was not addressed by Mr. Scott

13   Green.

14           Judge, I've got Scott Green's letter, the District

15   Attorney's letter.  I could either read it into the record or

16   for the Court to be aware of what it says.

17           THE COURT:  Let me see it.

18           MR. KEITH:  Yes, sir.

19           (Whereupon, the Court examined said document.)

20           THE COURT:  Okay.  This was the same letter that was

21   attached to exhibit A.

22           MR. KEITH:  That's correct, Your Honor.  Mr. Martin

23   testified in two trials, and testified basically in a third

24   trial.  And, Judge, there were two other codefendants that did

25   plead guilty where Mr. Martin did not have to go to trial but

1    pled because he was available to testify.

2          The second is from Assistant U. S. District Attorney

3    Calvin Williams that the Court has not seen.

4          (Whereupon, the Court examined said document.)

5          THE COURT:  Okay.  Make that defendant's exhibit one.

6          That's the letter from Mr. Fields, is that right?

7          MR. KEITH:  Assistant District Attorney Calvin

8    Williams.

9          THE COURT:  Williams.  Okay.

10          MR. KEITH:  Yes, sir.

11          Judge, what you've got before you are basically six

12    trials that Mr. Martin had agreed to testify in or be on

13    standby should there not be a plea.  Mr. Martin had knowledge

14    of those cases not because he was involved in those offenses, a

15    lot of this is what people had told him and things he had heard

16    in jail, not because he had involvement in these murders.

17          Your Honor, the Government wanted to base their

18    eighteen month downward departure that they say represents a

19    reduction of six months for each trial Martin participated in

20    on behalf of the State of Alabama.  He testified in three

21    trials --

22          THE COURT:  Three trials?  How many now, six months

23    for each trial?

24          MR. KEITH:  Yes.

25          THE COURT:  They're counting three trials.

1          MR. KEITH:   Three guilty pleas as a result of Mr.

2    Martin's agreement to testify.

3          THE COURT:   The trials were two for *Cowell* (ph.) and

4    one for Gray?

5          MR. KEITH:   Yes, Your Honor.

6          THE COURT:   That's three trials?

7          MR. KEITH:   Yes, Your Honor.

8          THE COURT:   And you said six months per trial?

9          MR. KEITH:   That's Mr. Speirs' motion -- the basis

10   for the calculation.

11         THE COURT:   Okay.

12         MR. KEITH:   Judge, there's three other cases that

13   pled guilty, that otherwise he wouldn't have testified in is

14   the base for us saying we should not get eighteen months, but

15   we should get another eighteen months, six months for pleading

16   guilty to make it for a total of thirty-six months, is what Mr.

17   Martin thinks he's deserving of.

18         Judge, there have been threats on Mr. Martin's

19   family.  I have witnesses here that there were the threats made

20   on Mr. Martin's family because of his testimony against these

21   people.  He had also provided the Government with some

22   unrealized consideration that he was never provided, some third

23   party cooperation in the form of Government assistance, Your

24   Honor.  During the time he has been in State custody he's had

25   no disciplinaries, and basically been in segregation,

1    protective custody because of the threats on his life.  He's

2    made a substantial commitment the State and Federal Government

3    to provide assistance.

4              Based on other cases, Judge, I would just suggest

5    that he's due a little more than eighteen months.  He's been

6    sentenced to a hundred and twenty months by this Court.

7              THE COURT:  Can I see the *Presentence Report*?  I

8    don't see it in C. M. E. C. F.  Do you have a copy?

9              THE PROBATION OFFICER:  Yes, sir.

10             THE COURT:  He received an original sentence of a

11   hundred and twenty months?

12             MR. KEITH:  Yes, Your Honor.

13             THE COURT:  Was that a mandatory minimum?

14             THE PROBATION OFFICER:  No, Your Honor, it's felon in

15   possession of a firearm at the high end of the guideline.

16   Actually, if I may, it was the guideline range because of the

17   statutory maximum was ten years, and his offense level was

18   greater than the statutory maximum.

19             THE COURT:  So I gave him the maximum guideline

20   range, from what I see here.  The guideline range was two ten

21   to two sixty-two, and recommended was a sentence of two hundred

22   and fifty months.  The maximum was ten years?

23             THE PROBATION OFFICER:  May I approach?

24             THE COURT:  Yes.  I see.

25             THE PROBATION OFFICER:  You found that there were

1    certain --

2            MR. SPEIRS:  Your Honor, if the Court recalls, almost

3    all parties believed that Mr. Martin was an armed career

4    criminal where he would have been subject to a mandatory

5    sentence of fifteen years to life.  But for want of a single

6    document, and it's because the juvenile records had been

7    destroyed, the Government did produce a police report but under

8    Eleventh Circuit case law that police report was not competent

9    evidence.  Had the State of Alabama kept juvenile records, the

10   Government's confident they would have been able to show that

11   Mr. Martin was an armed career criminal.  We didn't have the

12   document under the Eleventh Circuit case law, therefore being

13   sentenced to a hundred and twenty months and was not deemed to

14   be an armed career criminal.

15           THE COURT:  There was no mandatory minimum?

16           MR. SPEIRS:  That's correct, sir.

17           THE COURT:  So I gave him the maximum.

18           MR. SPEIRS:  That's correct, sir.

19           THE COURT:  Go ahead.

20           MR. KEITH:  Judge, I'd like you to hear from Mr.

21   Martin briefly.  At this point I'll call him as a witness.

22           THE COURT:  You may call him.  Let's swear him in.

23                   Q U I N T R E L L   M A R T I N,

24       the witness herein, having first been duly sworn or

25   affirmed to tell the truth, was examined and testified as

1  follows:

2                      DIRECT EXAMINATION

3                 BY MR. KEITH OF QUINTRELL MARTIN:

4  Q.  State your name for the record.

5  A.  Quintrell Martin.

6  Q.  Mr. Martin, you were approached at some point in time by a

7  District Attorney here in Montgomery County by the name of

8  Scott Green?

9  A.  Yes, sir.

10  Q.  And you've heard the representations to the Court in a

11  letter he authored about your cooperation with the State in the

12  case of Michael Gray and Anthony Tower?

13  A.  Yes, sir.

14  Q.  Is there any information that you would like to make the

15  Court aware of that Judge Thompson has not heard about the way

16  you were approached, what you were asked to do, or if there

17  were any representations about what you would receive in

18  exchange for your agreement to testify?

19  A.  Yes, sir.

20  Q.  Tell the judge.

21  A.  When I talked with him, my case agent, Jennifer Rule (ph.)

22  was present one time.  And she told me if I helped them,

23  because of the seriousness of the case, that I will receive

24  sixty months off my sentence.  And I was lacking at twenty

25  years then.  Then when I didn't get the twenty years, they

1    didn't want to do nothing for me.

2          But from the beginning she told me that I would

3    receive sixty months.  She told all my family members the same

4    thing.  They met with her on several occasions, and she told

5    them the same thing.  So that's what I thought I was going to

6    get it unless I help.  Then Scott told me he had been talking

7    with her.  He didn't think they were going to give me what I

8    wanted.  So I didn't want to back out of it, but he really

9    needed me to help him out.  But I thought they would still give

10   me more than the eighteen months.

11          I thought it would be more, but it wasn't going to be

12   five years.  But he told me it would be like three or four,

13   something like that.  I had no idea it was eighteen months.

14   Everywhere I got --

15   Q.  Let me stop you for a minute.

16          When were these representations made?  You're talking

17   about Jennifer Ruden.

18   A.  Yes.

19   Q.  When did she have these conversations with you and your

20   family?

21   A.  When I first got arrested on federal charges I had agreed

22   to give a proffer, talked with her.  Then she came to talk with

23   me at the city jail on several other occasion.

24   Q.  This was all prior to you testifying in the Circuit Court

25   of Montgomery County?

1    A.   Yes, sir.

2    Q.   And it's prior to being sentenced by Judge Thompson?

3    A.   Yes, sir.

4    Q.   Anything else about this witness?

5    A.   Yes.  And she just told me if I cooperated with her, how

6    she would help me.  Then the last thing I heard was when I

7    talked with you and the probation officer, and Mr. Speirs told

8    me, he told me to continue to cooperate with them and they

9    would help me.  I had no idea.  I -- Had I known that, I

10   wouldn't have put myself out for that.

11        My family has been threatened, I've had several

12   fights in State prison.  I just wouldn't have done it.

13   Q.   After your testimony on the *Gray* and *Cowell (ph.)* case you

14   were approached by another District Attorney by the name of

15   Calvin Williams?

16   A.   Yes, sir.

17   Q.   Where you agreed to testify against the Government called

18   *Oppenfields (ph.)*.

19   A.   Yes, sir.

20   Q.   What, if anything, did Mr. Calvin Williams say to you about

21   any inducements or representations about what he might try to

22   help you?

23   A.   I was brought up from State prison on two occasions where I

24   had to go to the county jail and put in protective custody.

25   And he talked with Verne, and they said if I assisted them in

1    the case I would have something for it.  When I got the letter

2    for my reduction, there was nothing in there about that.

3           From the beginning he told me that he talked with

4    Verne, that they were going to do something for me so I did it

5    anyway.  And when I received the paper about the reduction what

6    they were recommending, that didn't even have that in here.

7    Q.  So you feel basically you got no credit for Calvin

8    Williams?

9    A.  I didn't get no credit.

10   Q.  You explained to Judge Thompson all about the threats that

11   your family has received?

12   A.  Yes, sir.

13   Q.  And yourself?  The threats where you have been

14   incarcerated?

15   A.  Yes.  I received threats and telling them physical they did

16   what I was going to do -- I was still thinking about myself and

17   trying to help myself out, so I went along and did it anyway.

18   So then when I testified in the trial, they put it in the

19   newspaper and everybody knew about it.

20          I had no idea they were going to put it in the

21   newspaper like I was the star witness in the case.  If it

22   wasn't for me it wouldn't have been done; that basically put

23   the whole case and everybody knew it.  And they have been

24   hounding me ever since.

25   Q.  Have you been locked up since July of oh four?

1    A.  Yes, sir.

2    Q.  You're still in the custody of the State Department of

3    Corrections?

4    A.  Yes, sir.

5    Q.  And you have yet to start serving on your hundred and

6    twenty month sentence in the Federal system?

7    A.  Yes, sir.

8    Q.  Is there anything else you would like to tell Judge

9    Thompson why you should get more of a downward departure?

10   A.  I met with Ms. Jennifer Rudden again, and she talked with

11   some of my family members and they took fingerprints and

12   everything.  And they made controlled drug buys for them and I

13   didn't get nothing for that.  So I feel that I was used for

14   stuff, that they arrested people and nothing was done about

15   it.

16   Q.  You now understand or have since been told apparently the

17   Government can't put you in what they call third party

18   cooperation for doing what you're talking about for the other

19   family members?

20   A.  Right.  I feel like if they couldn't do it, they should

21   have told me.  Mr. Verne told me in the presence of you to

22   cooperate with her, and I did just that.  And I didn't get

23   nothing for that neither.

24   Q.  And you expected to get something for it?

25   A.  Yes, sir.

1    Q.   Anything else, Mr. Martin?

2    A.   No, sir.

3    Q.   No further questions.

4                        CROSS EXAMINATION

5                 BY MR. SPEIRS OF QUINTRELL MARTIN:

6    Q.   Mr. Martin, you understand and your counsel today has

7    admitted before this Court that you had a hand in the, or had

8    involvement in the death of Mr. Johnny Jackson, isn't that

9    right?

10   A.   Yes, sir.

11   Q.   And, sir, you went to Mr. Johnny Jackson's house because

12   there was a kilo of cocaine that was in the back, is that

13   right?

14   A.   Yes, sir.

15   Q.   And as a result of you going to his house, Mr. Johnny

16   Jackson was killed, right?

17   A.   Yes, sir.

18   Q.   And that was no-billed in the state for capital murder,

19   correct?

20   A.   Yes, sir.

21   Q.   And, sir, you read the plea agreement that was executed by

22   you and the Federal Government, correct?

23   A.   Yes, sir.

24   Q.   And in that plea agreement you have no liability, Federal

25   liability for the death of Johnny Jackson and that bad kilo of

1    cocaine, isn't that correct?

2    A.  I did.  They held me responsible.  I got twenty years for

3    the gun.

4    Q.  Sir, in that agreement the Government agreed not to

5    prosecute you for a drug deal gone bad, correct?

6    A.  That was in the agreement.

7    Q.  That's in the agreement, isn't it?

8    A.  That's in the agreement.

9    Q.  All right.  So you have no liability for that whatsoever?

10   A.  No, sir.

11   Q.  All right.  And in addition, there was discussions that you

12   had with me and your counsel wherein there was a belief that

13   you may have been an armed career criminal, is that correct?

14   A.  Yes, sir.

15   Q.  And that turned out not to be true, right?

16   A.  Yes, sir.

17   Q.  So your original plea agreement was for around twenty

18   years, isn't that correct?

19   A.  Yes, sir.

20   Q.  And now you're serving a hundred and twenty months; ten

21   years, correct?

22   A.  Yes, sir.

23   Q.  And you're not going to serve any time for the death of

24   Johnny Jackson, you are not found to be an armed career

25   criminal, and the Government has still agreed to give you time

1  off for the stuff that you did do for the State of Alabama,

2  isn't that right?

3  A.  Not for everything.

4  Q.  Sir?

5  A.  They didn't give me credit for anything.  I just want

6  credit for what I done, everything I done.

7  Q.  Sir, it is credit to you, and we had this conversation in

8  the jail with you and your counsel of record present, that the

9  credit you were still earning was that you would have no

10  liability for the death of Johnny Jackson.  We had that

11  conversation, sir.  Do you recall it?

12  A.  No, sir.

13  Q.  Your counsel was there.

14  A.  I was never told by me not receiving anything that I didn't

15  do with my downward departure.  My plea agreement was twenty

16  years if I was an armed career criminal.  You told me if I

17  wasn't an armed career criminal, then I wouldn't get the twenty

18  years.  So everything that everyone told me had changed.  I was

19  told by a lot more people that I would receive credit for doing

20  that, and I received nothing about it.

21       I'm ain't complaining about the eighteen months, I

22  just want stuff for what I done.  If I got people to know

23  stuff, then my family shouldn't have gone out there and have

24  people arrested.  For me just to be sitting there and joked on

25  and laughed about like it's funny or something, it's not funny.

1    People I had to do that to went to jail.  That's a waste of

2    their time and a waste of mine.

3    Q.  Mr. Martin, do you recall when you changed your plea in

4    front of the magistrate judge in this case?

5    A.  Do I recall what?

6    Q.  When you changed your plea in front of the magistrate

7    judge.

8    A.  I ain't never changed my plea.  I signed the plea for the

9    twenty years.

10    Q.  You stood before a magistrate judge and said you were

11    guilty of being felon in a possession.  Do you recall that?

12    A.  Yeah, I did that.

13    Q.  Sir, just listen to my question.  Do you recall at that

14    time wherein your counsel and I had an in-depth discussion with

15    you about your plea agreement because you were unsure if you

16    wanted to plead guilty.  Do you recall that?

17    A.  Yeah, because I --

18    Q.  No, sir, that wasn't my question.  My question --

19          THE COURT:  Just answer his question.  Do you recall

20    it?

21    A.  Yes, sir, I recall it.

22    Q.  Do you recall during that conversation where I explained to

23    you that you were still -- everything that you were doing you

24    were getting credit, was going to be counted for the fact that

25    no one, and you specifically, were not going to be held liable

1    for the death of Johnny Jackson.  Do you recall it?

2    A.  No, sir.  I tried to get you to do while I was in jail.

3    They told me that I was the one that did the shooting and

4    that's the only one they wanted.

5    Q.  Do you not deny that in your plea agreement you understand

6    that you will not be held liable for the death of Johnny

7    Jackson?  Do you understand that?

8    A.  Yes, sir.

9    Q.  And do you also understand that I filed the motion under

10   Rule thirty-five to the reduce your sentence, do you understand

11   that?

12   A.  Yes, sir.

13   Q.  And you understand that the conversations with your own

14   counsel, and your counsel and I have had discussions on

15   numerous occasions about the appropriateness of an eighteen

16   month reduction?

17   A.  No, I never talked with him about that until I received it.

18   I didn't know that until -- I had to write a letter.  Ain't

19   nobody ever filed it.  I had to write the letter to the Court

20   myself.  My letter was considered as a motion and the

21   Government responded.  I was never told I would get no eighteen

22   months.

23           MR. SPEIRS:  That's all I have.

24           MR. KEITH:  Nothing further, Your Honor.

25           THE COURT:  You may step down.  Thank you.

```
 1              (Whereupon the witness, Quintrell Martin, stepped
 2      down from the stand.)
 3              THE COURT:  What's Probation's position?
 4              THE PROBATION OFFICER:  Your Honor, the Government
 5      made the motion for eighteen months.  Probation noticed the
 6      seriousness of the underlying offense.  It would be
 7      presumptuous for Probation said yes to Mr. Speirs' calculation.
 8      And we would concur.
 9              THE COURT:  So you support the eighteen months, is
10      what you're telling me?
11              THE PROBATION OFFICER:  Yes, sir.
12              THE COURT:  Anything else?
13              MR. SPEIRS:  Your Honor, just briefly.  And I think
14      the Court may, through my cross examination, understand how the
15      Government has derived at eighteen months.  Central to this
16      entire discussion, Judge, is the fact that Johnny Jackson,
17      whether he was a drug dealer or whatever he was, was murdered
18      or shot in his own house.  And there can be discussions about
19      whether it was self-defense, but I think it's odd that young
20      men came to husband house armed and they want to talk about
21      self-defense.  I think that's neither here nor there, Judge.
22              The fact of the matter is the man is dead, and the
23      State of Alabama, there was a no-bill.  The Government decided
24      that --
25              THE COURT:  The "Government" being the United States
```

1    or Alabama?

2              MR. SPEIRS:  The United States pursuant to the plea

3    agreement decided not to hold Mr. Martin accountable for that

4    crime, which it could have, Judge, under Eighteen U.S.C. nine

5    twenty-four C and twenty-one eight forty-one, Judge.  The

6    Government was free to seek charges against him for a drug deal

7    gone bad and chose not to.  So I believe Mr. Martin fails to

8    understand the gravity of that benefit to him, Judge, and he

9    was earning that benefit with everything he did, and he earned

10   subsequent benefit through his testimony and his assistance to

11   the State of Alabama.

12             THE COURT:  Thank you.

13             Anything else, Mr. Keith?

14             MR. KEITH:  Judge, just that I think the death of

15   Johnny Jackson, as far as this Rule thirty-five hearing, is not

16   relevant.

17             THE COURT:  Well it's relevant in the sense that I

18   should consider the entire circumstances that led first of all

19   to the initial plea, as well as to what would be a fair

20   reduction here for his cooperation.  I think the Government's

21   point is that he's received a lot of benefits so far, and I

22   think the Government wants to place, whatever I give him, for

23   his cooperation in the appropriate context.  I think it's a

24   matter of context.

25             MR. KEITH:  It is, Your Honor.  Of course we're

1    wanting to focus you --

2         THE COURT:  Obviously, I can only give him credit for

3    his cooperation.  Nonetheless, one has to consider the

4    seriousness of the initial charge as well as the seriousness of

5    the circumstances that led to the charge.

6         But go ahead.

7         MR. KEITH:  Yes, sir.  Judge, the context we were

8    wanting to emphasize was his promises that he met this

9    performance in state court where he testified in state court.

10        Judge, we've never admitted or acknowledged or agreed

11   with the Government that he has any liability, any legal

12   liability in the death of Johnny Jackson.  We think it's

13   clearly self-defense, and that's why they no-billed the case.

14        While we didn't want to turn down the Government's

15   promise, we never felt there was a factual basis for them to do

16   it if they were aware of what the actual facts were, the

17   forensics and all that during that incident.

18        Yes, sir, Judge, he should have been -- well, drug

19   dealers carry guns and they both were and maybe they shouldn't

20   have had a gun, and certainly Mr. Jackson shouldn't have pulled

21   his gun out and shot Mr. Quintrell Martin first, but that's

22   just what we want you to appreciate, it wasn't a capital

23   murder, it was an act of self-defense.  And I think we have the

24   evidence to substantiate those statements based on the grand

25   jury.  And that's why we want the Court to focus on his

| | |
|---|---|
| 1 | assistance to the state court in those murder cases. |
| 2 | THE COURT:  Bring the defendant forward, Mr. |
| 3 | Quintrell Martin. |
| 4 | I will first announce the proposed sentence and then |
| 5 | I'll give you an opportunity to say something as to the whether |
| 6 | I should impose the sentence as announced. |
| 7 | The Court finds the Government's motion for downward |
| 8 | departure, document number fifty-seven, pursuant to Rule |
| 9 | thirty-five of the *Federal Rules of Criminal Procedure* should |
| 10 | be and is granted based on the defendant's substantial |
| 11 | assistance to the Government.  The Court therefore finds that |
| 12 | the offense level should be thirty, which when combined with |
| 13 | the criminal history category of five creates a guideline range |
| 14 | of one hundred and twenty months and a fine range from fifteen |
| 15 | thousand to a hundred and fifty thousand dollars. |
| 16 | The sentence imposed in this case on June twelfth, |
| 17 | two thousand and seven is therefore reduced from a hundred and |
| 18 | twenty months imprisonment to a total term of a hundred and two |
| 19 | months imprisonment.  All other conditions imposed on June |
| 20 | twelfth, two thousand seven shall be in effect. |
| 21 | The defendant's motion for downward departure, |
| 22 | document number fifty-six, is denied. |
| 23 | Now I ask you at this time, Mr. Martin, are there any |
| 24 | objections to the sentence imposed or to the manner in which |
| 25 | the Court pronounced it, other than those objections previously |

1    stated for the record?  For example, do you have any objection

2    to the Court's ultimate findings of facts or conclusions of

3    law?  Furthermore, you are instructed that if you have an

4    objection, you must not only state the objection, you must give

5    the grounds for the objection.

6            THE DEFENDANT:  Yes, sir.  I ain't complaining about

7    the eighteen months, I'm just talking about the other stuff

8    that I done that I didn't receive no credit.

9            THE COURT:  I think eighteen months adequately

10   captures your cooperation, including everything that you did.

11   Not just the three trials, but your cooperation that led to the

12   convictions of people who pled guilty.

13           Do you have anything to say as to why the sentence as

14   announced should not be imposed, or do you have anything to say

15   in mitigation of the sentence?

16           THE DEFENDANT:  No, sir.

17           THE COURT:  It is the order, judgment and decree of

18   the Court that the sentence as announced is hereby imposed.

19           Now you have ten days to file any notice of appeal.

20   If you cannot afford the cost of an appeal the Court will allow

21   to you appeal at no cost, including furnishing you with a free

22   transcript and a free attorney.

23           You are in the custody of the marshal.

24           (Whereupon, the proceedings were concluded.)

25                   * * * * * * * *

1

2                    COURT REPORTER'S CERTIFICATE

3

4

5        I certify that the foregoing is a correct transcript

6    from the record of proceedings in the above-entitled

7    matter as prepared by me to the best of my ability.

8

9        I further certify that I am not related to any of

10    the parties hereto, nor their counsel, and I have no

11    interest in the outcome of said cause.

12

13        Dated this 15th day of May 2008.

14

15
                          \s\ Mitchell P. Reisner, CM, CRR
16                        **MITCHELL P. REISNER, CM, CRR**
                          Official US Dist. Court Reporter
17                        Registered Professional Reporter
                          Certified   Real-Time   Reporter
18

19

20

21

22

23

24

25